UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

– – – – – – – – – – – – – – – – – – – – – – – – – – – X

| | | |
|---|---|---|
| ELENOR HANNUM, | : | Case No. |
| Plaintiff(s), | : | |
| v. | : | **COMPLAINT** |
| | | JURY TRIAL DEMANDED |
| JACKSON TOWNSHIP, JACKSON TOWNSHIP COUNCIL, JACKSON TOWNSHIP COUNCIL PRESIDENT JENNIFER KUHN, JACKSON TOWNSHIP ATTORNEY GREGORY MCGUCKIN, | : : : | |
| Defendant(s). | : | |

– – – – – – – – – – – – – – – – – – – – – – – – – – – X

Elenor Hannum, by and through their attorneys, Anderson Law, for their Complaint against Jackson Township, Jackson Township Council, Jackson Township Council President Jennifer Kuhn, Jackson Township Attorney Gregory McGuckin (collectively "Defendants") alleges, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a First Amendment Free Speech claim brought under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6–2 against the municipality of Jackson Township, Jackson Township Council, Jackson Township Council President Jennifer Kuhn, Jackson Township Attorney Gregory McGuckin for the violations of Plaintiff's First Amendment Right to Free Speech.

2. Plaintiff seeks compensatory damages; punitive damages; declaratory judgement finding §3-12 is unconstitutional and in violation of New Jersey Civil Rights Act 10:6-2(c); declaratory judgement that the curtailing of Plaintiff's speech and subsequent removal was

unconstitutional and in violation of New Jersey Civil Rights Act 10:6-2(c); declaratory judgement that the application of §3-12 to Plaintiff was unconstitutional and in violation of New Jersey Civil Rights Act 10:6-2(c); permanent injunctive relief enjoining the Defendants from placing unbridled discretion in the presiding officer to restrain speech based upon its overbroad, vague, viewpoint and content-based rules; an award of reasonable attorney's fees pursuant to 42 U.S.C. §1983; a permanent injunction to cease Defendant's illegal conduct; litigation costs and expenses; and such other relief that the court deems just and proper.

## JURISDICTION

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under 42 U.S.C. § 1983 and U.S. Const. amend. I.

## VENUE

4.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants reside or are domiciled in this district and all defendants reside or are domiciled in New Jersey.

## PARTIES

5.    Plaintiff Elenor Hannum is an individual who resides in Jackson Township, New Jersey. Plaintiff is a citizen of New Jersey.

6.    Upon information and belief, defendant Jackson Township is a municipal corporation that is incorporated in New Jersey under the authority of the Legislative enactment of the State of New Jersey and has its principal place of business in 95 W Veterans Highway, Jackson, NJ 08527. Upon information and belief, Jackson Township is organized under the mayor-council form of the Faulkner Act (N.J.S.A. 40:69A-a. et seq.) as of July 1, 2006.

7.    Upon information and belief, defendant Jackson Township Council is the Township Council for Jackson Township, which is incorporated in New Jersey and has its principal place of

business in 95 W Veterans Highway, Jackson, NJ 08527. Upon information and belief, Jackson Township serves as the council branch of municipal government under the mayor-council form of the Faulkner Act (N.J.S.A. 40:69A-a. et seq.). Upon information and belief, defendant Jackson Township Council is policymaker with authority over Jackson Township Council proceedings.

8.    Upon information and belief, defendant Jackson Township Council President Jennifer Kuhn ("Council President Kuhn") is the Council President for the township council for Jackson Township and is a policymaker with final authority over decisions at Jackson Township Council proceedings.

9.    Upon information and belief, defendant Township Attorney Gregory McGuckin ("Township Attorney McGuckin") is the Township Attorney for Jackson Township and is a policymaker with authority over Jackson Township Council Proceedings.

## FACTS

10.    On February 27, 2024, Plaintiff attended and spoke at the Jackson Township Council meeting, which was a public meeting. A link to a video of the meeting which, upon information and belief, was uploaded by Jackson Township as part of the public record can be found on YouTube: https://www.youtube.com/watch?v=NwBFL1PXL_g&t=3911s

11.    The public meeting has time set aside for public hearing regarding the adoption of resolutions and ordinances for final consideration.

12.    On February 27, 2024, the council had a second reading for final consideration of Ordinance 06-24 entitled "An Ordinance of the Township of Jackson County of Ocean, State of New Jersey, amending chapter 3 of the administrative code of the Township of Jackson establishing the position of director of the department of public safety." ("Ordinance 06-24")

13.     The ordinance was introduced on February 13, 2024, and was set for a public hearing on February 27, 2024.

14.     After the reading of the title for Ordinance 06-24, town council voted to open the hearing for a "public hearing" beginning at 28:20.

15.     A representative for the township then read off the rules for the "public hearing", stating that if any member of the public has "any comments to make" they are permitted to address the council at the microphone provided by town council and that members of the public have five minutes to speak and may only speak once.

16.     Sergeant John Rodriguez ("Sgt. Rodriguez"), who identified himself as the president of the Superior Officers Association ("S.O.A."), was given the first opportunity to address the council, with his speech beginning at 28:40 and continuing for five minutes and 47 seconds before concluding at 34:27.

17.     During Sgt. Rodriguez's speech, there was an audible chime sound at 32:40, apparently marking the precise five-minute mark.

18.     Sgt. Rodriguez continued speaking without admonishment or instructions to cease from any member of the council or Mayor Reina.

19.     In fact, when Council President Kuhn did speak up it was simply to say "let's keep it…" in what appeared to be an attempt to calm a contentious exchange between Sgt. Rodriguez and a council member.

20.     Sgt. Rodriguez was allowed to continue until he was over his allotted time by nearly a full minute.

21.     Council President Kuhn did not tell Sgt. Rodriguez that his "time was up" until he reached a part in his speech, which seemingly had nothing to do with the ordinance itself, where

Sgt. Rodriguez demanded more information about a recent wrongful death settlement that involved testimony from Chief Kunz.

22.     Council President Kuhn even directed the town attorney to respond to the Sergeant's request for comment on that million-dollar wrongful death settlement even though it was not raised until well after five minutes expired.

23.     Council President Kuhn then directed additional questions on this issue at the town attorney, seemingly directing him to identify the testimony of Police Chief Matthew Kunz as the reason for the settlement.

24.     Ms. Hannum was then allowed to speak next at the public hearing, with her comments beginning at 35:48.

25.     She began by alleging that Ordinance 06-24 was being advanced as part of a political agenda being advanced by a number of elected officials and individuals employed within the municipality in order to attack Chief Kunz.

26.     Ms. Hannum alleged that this political agenda was fueled in part by Mayor Reina's animosity towards Chief Kunz, following the Chief Kunz's refusal to cover up an incident involving Mayor Reina's son.

27.     Ms. Hannum further alleged that Council President Kuhn had a financial conflict of interest and was unfit for voting on matters related to police related ordinances due to her previous use of township law enforcement for personal financial gain.

28.     Ms. Hannum citied an incident wherein Council President Kuhn took pictures of law enforcement officers during evictions and residential removals and used these pictures of officers acting in their official capacity as advertising materials to promote her personal business, namely the "cash for keys" portion of her real estate business.

29.    Ms. Hannum detailed how facially inappropriate it was that Council President Kuhn, as an active council member would take pictures of active, on duty police officers and use them as propaganda for her personal business.

30.    Ms. Hannum stressed that using police officers acting in their official capacity for personal financial gain was not only improper for an active council member but also placed the officers and their families in danger, calling it disgusting and unethical.

31.    Ms. Hannum also raised issue with the fact that there was never a closed vote by law enforcement union membership regarding Ordinance 06-24, simply a "showing of hands" vote, which Ms. Hannum had never heard of a union doing before.

32.    Ms. Hannum then began to express her concerns about Council President Kuhn's conflict of interest on Ordinance 06-24 by stating that it was no secret that Council President Kuhn was in a romantic relationship with the Union President for the Police Benevolent Association ("P.B.A."), Jeff Henba who had been promoting and pushing Ordinance 06-24 and therefore Council President Kuhn should not be voting on the ordinance due to a conflict of interest.

33.    Council President Kuhn immediately declared Ms. Hannum out of order and asked for her to be removed from the meeting and asks for an officer to remove Ms. Hannum from the room while Ms. Hannum was attempting to voice her opinion that the Council President Kuhn should abstain from voting on the ordinance.[1]

---

[1] In the recording of the meeting, there is a sound which, upon information and belief, is Council President Kuhn using her hand to push her mic away from her mouth followed by the sound of President Kuhn murmuring, then an unidentified voice, presumedly Township Attorney Michael McGuckin, stating "…you could declare her out of order but I don't…" before Township Council President Kuhn says "I am going to declare you out of order ma'am."

34.    Ms. Hannum stated that she had a first amendment right to speak on this issue and that Council President Kuhn was not a dictator, yet Council President Kuhn continued to demand that armed uniformed police officers remove her from the hearing.

35.    Ms. Hannum was only three minutes into her allotted time for public comment when this occurred.

36.    At no point did Plaintiff engage in disorderly conduct or comment on matters unrelated to Ordinance 06-24 and the vote thereon.

37.    No reason was given as to why Ms. Hannum was declared out of order.

38.    No warnings were given to Ms. Hannum.

39.    No members of Township Council attempted to intervene.

40.    Mayor Reina did not attempt to intervene.

41.    Town Attorney Gregory McGuckin did not attempt to intervene.

42.    Ms. Hannum then walked away from the podium and quietly sat down in the audience so that she could observe the rest of the meeting and participate in later portions of the meeting.

43.    Ms. Hannum was then approached by uniformed officers who told her she had to leave the meeting and Ms. Hannum was then escorted out of the room by uniformed officers and under threat of police violence.

44.    While Ms. Hannum was being escorted out, Jeff Henba ("Henba"), the president of the PBA, an advocate for Ordinance 06-2 and the individual whose alleged romantic relationship with Township Council President Kuhn was identified by Ms. Hannum as creating an impermissible conflict of interest began to address council.

45.     Henba began by stating "before I address the main issue I am here to speak about tonight, I would just like to address a few residents in town who have spewed lies on social pages these last few weeks about my personal life…"

46.     This statement went on for approximately 20 seconds, was *explicitly* not related to the ordinance at issue, went uninterrupted by Council President Kuhn and Henba was not declared out of order for addressing the same issue raised by Ms. Hannum.

47.     Henba went on to talk about what the Police Chief did in the past two weeks in the workplace, detailing internal concerns and issues and practices before attacking the chief's leadership qualities and functions in his role. Henba's comments were not addressed to the ordinance itself, which would establish a new civilian position for various policies and procedure in the township related to public safety.

48.     On February 27, 2025, Plaintiff attended and spoke at the Jackson Township Council meeting, which was a public meeting. A link to a video of the meeting which, upon information and belief, was uploaded by Jackson Township as part of the public record can be found on YouTube: https://www.youtube.com/live/cXwm8_ZhcJc

49.     During the Second Reading and Public Hearing portion of the meeting, Ms. Hannum addressed the council during the second reading and public hearing for Ordinance 01-2025, entitled an Ordinance of The Township Of Jackson, County Of Ocean, State Of New Jersey, Amending And Supplementing Chapter 244 Of The Township Code Of The Township Of Jackson, Entitled "Land Use And Development Regulations" As To Amend §244-164 Entitled, "Property Maintenance"

50.     Ms. Hannum's public hearing portion begins at 24:26 of the video.

8

51.    Ms. Hannum opens by addressing the conflict of interests for Township Councilman Mordechai Burnstein, alleging that he has political allies and contributors to his PAC who have numerous properties and developments in the township and questioning his motivation for advancing an ordinance which lowers the property maintenance fines below that of any of the surrounding towns and counties.

52.    Township Councilman Mordechai Burnstein then interrupts Ms. Hannum twice during her portion of public comment, speaking over her as she expresses her concerns about him having a conflict of interest.

53.    No one, including Council President Kuhn or Township Attorney McGuckin instructed Township Councilman Burnstein to refrain from interrupting members of the public during their allotted five minutes for public comment.

54.    Ms. Hannum then began to voice her concern that the outcome of reducing the property fines would allow applicants to not carry out proper site planning or take care of the property in the appropriate manner when Council President Kuhn interrupted her, nonsensically stating "this hearing is about an ordinance, not applications." Ms. Hannum was in no way talking about applications or an application process at the time of Council President Kuhn's interruption.

55.    Ms. Hannum was then declared out of order with no explanation as to how or why she was out of order for discussing the impact of an ordinance reducing the fines for violations of a code addressing property maintenance on developers and prospectors who would face reduced fines for properties where the illegal use of the residential property as a rental would result in improper property maintenance.

56.    No warnings were given to Ms. Hannum.

57.    No members of Township Council attempted to intervene.

9

58.    Town Attorney Gregory McGuckin did not attempt to intervene.

59.    At 57:13 the Township Council had the second reading & public hearing on 05-2025 An Ordinance of The Township Of Jackson, County Of Ocean, State Of New Jersey, Amending And Supplementing Chapter 244 Of The Township Code Of The Township Of Jackson, Entitled "Land Use And Development Regulations" So As To Amend §244-168 Entitled, "Design Of Single- And Two-Family Dwellings"

60.    At 58:06 Ms. Hannum once again addressed Township Council.

61.    She began by asking Township Council "why is this ordinance being changed and who is it being changed for?"

62.    Council President Kuhn responded, "please speak you have three minutes."

63.    Ms. Hannum responded "No, I am asking the question."

64.    Council President Kuhn again responded "Please speak you have three minutes. I can do what I want. Please speak…this council will not answer your questions."[2]

65.    Ms. Hannum went on to state that she found it "quite interesting" that since Council President Kuhn has taken her position as Township Council President there have been 12 changes in land use regulations.

66.    Tellingly, at 1:09:58, another resident expressed her deep concern about Council President Kuhn saying "I can do what I want" in response to a citizen voicing their concern and the ongoing dearth of decorum shown by council members towards members of the public.

---

[2] Tellingly, during the hearing on February 27, 2024, Township Council President Kuhn not only allowed a Sgt. Rodriguez to go over his time limit by a full minute but directed the Township Attorney to answer Sgt. Rodriguez's questions which were asked long after the expiration of his time. Council President Kuhn even went so far as to ask to follow up questions about specifics of that member of the public's question that was not even raised by that member of the public.

67.    At 1:12:15, Ms. Hannum addresses Township Council during the Public Comment on Any Topic period of the meeting, wherein she notes that the Township Council erroneously construed the language of the first Ordinance that she commented on, pointed out that the penalties in the proposed ordinance for properties were changed from the first reading to the second reading and simply labelled "typos."

68.    Ms. Hannum also revisits her removal from the Town Council meeting nearly a year earlier, speculating as to whether the Town Council provided a Rice Notice to Chief Kuntz before that hearing,  whether the special meeting held on January 23, 2025 will be posting the meeting to the public and noting that Council President Kuhn's posting of said meeting to the Asbury Park Press, thereby bypassing the clerk's office, was illegal. On February 27, 2025, Jackson Township held a Township Council meeting, which was a public meeting. A link to a video of the meeting which, upon information and belief, was uploaded by Jackson Township as part of the public record can be found on YouTube:

https://www.youtube.com/live/78xoKGeAv0E?si=KpaWjdhLJHDpEMK6.

69.    As part of this meeting, beginning at minute 33:24, Council President Kuhn informed the public that she was "going to make a statement on behalf of [herself] and council."

70.    As part of this statement, Council President Kuhn demanded that members of the public be "respectful" during public comment and that "the attacks on council and anyone up on the dais is not going to be accepted and you will be declared out of order…if we are attacked individually, screamed at, yelled at, cursed at, you will be declared out of order and we will ask you to sit down. If it continues you will be asked to leave."

**AND AS FOR A FIRST CAUSE OF ACTION**

(Violation of First Amendment Rights – Facial– 42 U.S.C. § 1983)

1.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if more fully set forth at length herein.

2.     A statute, regulation, or policy is unconstitutionally vague on its face when the language of the item does not outline the prohibited conduct with sufficient certainty.

3.     Additionally, a public forum is classified as a public area that is open to general debate and assembly, either by specific government designation or by a matter of tradition.

4.     Speech in a public forum can be limited only narrowly.

5.     The Township Council meeting is classified as a public forum within which Plaintiff's speech can only be narrowly limited.

6.     Any restrictions as to the time, place, and manner of speech in a public forum must (1) be unrelated to content; (2) be narrowly tailored to serve a significant government interest; and (3) allow alternative ways of communicating the same information.

7.     §3-12 of the Jackson Township Administrative Code, entitled "Decorum" states that person who shall "disturb the peace of the Council, make abusive or slanderous remarks, or conduct himself or herself in an uncivil, disruptive or threatening manner during a Township meeting shall be asked by the presiding officer to submit to proper order." [3]

8.     §3-12 of the Jackson Township Administrative code is a formal regulation or policy statement by Jackson Township.

9.     §3-12 fails to outline the specific remarks that may be deemed "abusive" or "slanderous."

10.     §3-12 fails to outline the specific conduct that may be deemed "uncivil."

---

[3] Jackson Township statutes, policies, and ordinances are available at: https://ecode360.com/13357221#13357248

11.    §3-12 is unconstitutional on its face as the use of "abusive or slanderous remarks" constitutes viewpoint-based discrimination which prohibits speech because it opposes, or offends, the Board or members of the public.

12.    §3-12 is unconstitutional on its face as the use of "uncivil" constitutes viewpoint-based discrimination

13.    §3-12 is unconstitutional on its face as the prohibition on "abusive or slanderous remarks" is content-based, is not narrowly tailored to serve a significant government interest and does not allow alternative ways of communicating the same information.

14.    §3-12 seeks to regulate features of pure political speech and expression, such as Plaintiff's. solely for its viewpoint or content.

15.    §3-12 vests unbridled discretion in the Township Council and it's President to define and apply these vague terms.

16.    §3-12 imposes an overbroad restriction on the right to free expression

17.    §3-12 imposes content-based restrictions on speech that are not the least restrictive means of achieving a compelling government interest.

18.    Because Rule §3-12 precludes "abusive or slanderous remarks" and "uncivil" conduct and seeks to prohibit speech because it opposes, or offends, the Board or members of the public it is facially unconstitutional.

19.    Because Rule §3-12 is not narrowly tailored to serve a significant government interest and does not allow alternative ways of communicating the same information it is facially unconstitutional.

20.    Because Rule §3-12 imposes content-based restrictions on speech that are not the least restrictive means of achieving a compelling government interest it is facially unconstitutional.

21.    A statute, regulation, or policy is unconstitutionally vague on its face when the language of the item does not outline the prohibited conduct with sufficient certainty.

22.    §3-12 fails to outline the specific remarks or conduct that may "disturb the peace."

23.    §3-12 fails to outline the specific remarks that may be deemed "abusive" or "slanderous."

24.    §3-12 fails to outline the specific conduct that may be deemed "uncivil", "disruptive."

25.    §3-12 is unconstitutionally vague because it fails to provide Township Council meeting attendees with adequate warning and/or notice as to what conduct would cause them to be removed from the meeting.

26.    §3-12 provides for no adjudication process for improper removals

27.    Because Rule §3-12 fails to outline the exact conduct that would be prohibited and result in removal for a Township Council meeting, nor a procedure to adjudicate such conduct, the rule is unconstitutionally vague.

28.    Additionally, the policy statement read by Council President Kuhn on behalf of Township Council and herself on March 11, 2025, which restrict abusive, personally directed, disparaging, antagonistic and generally hostile remarks is a facially unconstitutional policy.

## AND AS FOR A SECOND CAUSE OF ACTION

(Violation of First Amendment Rights – As Applied – 42 U.S.C. § 1983)

29.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if more fully set forth at length herein.

30.    A public forum is classified as a public area that is open to general debate and assembly, either by specific government designation or by a matter of tradition.

31.    Speech in a public forum can be limited only narrowly.

32.    The Township Council meeting is classified as a public forum within which Plaintiff's speech can only be narrowly limited.

33.    Any restrictions as to the time, place, and manner of speech in a public forum must (1) be unrelated to content; (2) be narrowly tailored to serve a significant government interest; and (3) allow alternative ways of communicating the same information.

34.    Plaintiff's pure political speech was restricted as a direct result of the content of her speech.

35.    Defendants were acting under color of state law at all times during the events describe in the Complaint.

36.    §3-12 of the Jackson Township Administrative code is a formal regulation or policy statement that was then acted upon by employees with final policymaking authority and there was a failure to adequately train or supervise employees that resulted from deliberate indifference to the injuries that may be caused.

37.    The cutting short of Plaintiff's time to speak, forced removal by armed police officers and subsequent ban from attending the remainder of the hearing were a direct result of Plaintiff's attempt to advocate for herself and raise issues regarding the proposed ordinance including Council President Kuhn's conflict of interest, the improper political agenda leading to the creation of the ordinance and the appearance of Defendants' impropriety.

38.    Plaintiff was not asked to submit to proper order nor was the procedure for removal under §3-12 followed.

39.    The members of Township Council in attendance did not speak up to defend Plaintiff's free speech rights or prevent her removal because they disagreed with Plaintiff's point of view.

40.    The City Attorney did not speak up to defend Plaintiff's free speech rights or prevent her removal because they disagreed with Plaintiff's point of view.

41.    Mayor Reina did not speak up to defend Plaintiff's free speech rights or prevent her removal because he disagreed with Plaintiff's point of view.

42.    Public forums are intended to foster general assembly and debate where community members can exercise their free speech.

43.    It is not within the governmental interest to prohibit an individual from advocating for themselves, nor is it within the governmental interest to ban individuals from the ability to engage in public forums as a result of their advocacy.

44.    The removal of Plaintiff did not serve any legitimate government interest, did not follow the procedure as set forth in §3-12 and was a malicious act meant to punish Plaintiff for engaging in protected speech and to chill future speech.

45.    Plaintiff was not removed as a result of any disorderly conduct under NJSA 2C:33-8, which states: "a person commits disorderly persons offense if, with purpose to prevent or disrupt a lawful meeting, procession or gathering, he does an act tending to obstruct or interfere with it physically."

46.    Plaintiff did not have the intention to prevent or disrupt the meeting, nor did she act to obstruct or interfere with the meeting physically.

47.    Defendants did not allow Plaintiff alternative ways to communicate or receive the same information.

48.    The Township Council President, acting as final policy maker, failed to treat similarly situated individuals the same based on their differences in viewpoint and the content of their speech.

49.    By stopping Plaintiff's speech and removing Plaintiff from the February 27, 2024, meeting, Defendants actively and intentionally sought to disallow and discourage Plaintiff from being able to communicate information regarding conflicts of interest, impropriety, corruption, abuse of power, and so on as they related to the ordinance being read.

50. Defendant's removal of Plaintiff's and prevention of Plaintiff speaking during the ordinance-specific and subsequent open hearing portion of the February 27, 2024, meetings due to her viewpoint of her speech and content of her speech was a clear and blatant violation of the First Amendment as applied.

51. Additionally, the policy statement read by Council President Kuhn on behalf of Township Council and herself on March 11, 2025, which restricts abusive, personally directed, disparaging, antagonistic and generally hostile remarks has been unconstitutional as applied.

**AND AS FOR A THIRD CAUSE OF ACTION**

(Violation of Article 1, Paragraph 6 of the New Jersey Constitution)

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if more fully set forth at length herein.

53. Article 1, paragraph 6 of the New Jersey Constitution states that "[e]very person may freely speak, write, and publish his sentiments on all subjects, […]. No law shall be passed to restrain or abridge the liberty of speech or of the press."

54. §3-12 places restraints on an individual's liberty to speak freely because of its unconstitutionally vague construction and restrictions on viewpoint and content-based speech which fails to further any legitimate government interest.

55. Under §3-12, the Presiding Officer is given the ability to declare someone's conduct as out of order and remove them from the City Hall meeting under threat of physical police violence, without outlining the specific conduct that would warrant such removal. As a result, the Presiding Officer is given unfettered discretion to determine what they personally feel to be conduct warranting removal.

56.    There is no mechanism in place or outlined within §3-12 that ensures that the Presiding Officer is removing an individual for constitutionally sound reasons and not because of the content or viewpoint of their speech.

57.    Plaintiff's pure political speech was terminated, and she was removed from the Township Council meeting as a result of the viewpoint and content of her speech.

58.    The Township Council President, acting as final policy maker, failed to treat similarly situated individuals the same based on their differences in viewpoint and the content of their speech.

59.    Plaintiff was removed under the physical threat of police violence.

60.    Plaintiff was not disorderly within the meaning of NJSA 2C:33-8 nor did she intend to disturb or interfere with the quiet and good order of the Township Council Meeting. Plaintiff merely intended to exercise her right to speak freely as granted by Article 1, paragraph 7 of the New Jersey Constitution which was restrained and abridged as a result of §3-12 and the actions and inactions of Defendants.

## AND AS FOR A FOURTH CAUSE OF ACTION
(Fourteenth Amendment Violation – 42 U.S.C. §1983)

61.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if more fully set forth at length herein.

62.    When determining whether due process standards have been met, a three-factor balancing test must be examined. The three factors are as follows: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of interests through the procedures that were used, and (3) the Government's interest.

63.     The Township Council President unilaterally decided to remove Plaintiff from the February 27, 2024, meeting. Plaintiff was not afforded the opportunity to respond, change her conduct or plead her case. Plaintiff suffered and continues to suffer deprivation of her due process rights.

64.     Plaintiff was removed under the physical threat of police violence for acts of pure political speech in a public forum.

65.     The President and those similarly situated are given blanket authority to remove members of the public without any accountability.

66.     Plaintiff suffered as a result and others will continue to suffer should nothing be changed.

67.     It is within the Defendants' interest to remedy the wrongs done to Plaintiff.

68.     The removal of Plaintiff from Township Council meetings signals to other community members that should they speak out and advocate for themselves and the community, they will suffer due process deprivations.

69.     This would run completely contrary to the purpose of such meetings.

70.     At all times, Defendants were acting under color of law which deprived plaintiff of a right protected by the US Constitution and federal law.

71.     The Township Council President, acting as final policy maker, failed to treat similarly situated individuals the same based on their differences in viewpoint and the content of their speech.

72.     For the reasons listed above, Plaintiff has suffered a violation of her due process rights at the hands of Defendants.

## AND AS FOR A FIFTH CAUSE OF ACTION

(Violation of Article 1, Paragraph 1 of the New Jersey Constitution)

73.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if more fully set forth at length herein.

74.     Article 1, paragraph 1 of the New Jersey Constitution states that "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."

75.     The right to defend life and liberty is directly contradicted by the events leading up to Plaintiff's removal and actual removal under physical threat of police violence.

76.     There is no means by which City officials can be held accountable when they wish to remove and/or ban someone.

77.     Plaintiff was banned as a result of the content of her speech, which was adverse to the goals and interests of the Township Council President.

78.     There was no warning afforded to Plaintiff, Plaintiff was not asked to submit to proper order, Plaintiff was not asked to voluntarily leave the proceeding, nor was Plaintiff given the ability to have a hearing to defend herself before Defendants relied on threats of physical violence by members of the state to have her removed from the meeting.

79.     The lack of notice is a clear and direct violation of Plaintiff's right to defend her own life and liberty.

80.     The Township Council President was able to unilaterally remove and ban Plaintiff without receiving consent or permission to do so from other city officials.

81.     The Township Council President was able to unilaterally make this decision without oversight, directly violating Plaintiff's right to life and liberty.

20

82.     Those who either were, or may have been, in a position to provide oversight elected not to do so or were overridden by the Township Council President.

83.     Plaintiff's rights were denied and or stripped from her under threat of physical violence from the township police department.

84.     For the reasons listed above, Plaintiff has suffered a violation of her due process rights at the hands of Defendants.

### AND AS FOR A SIXTH CAUSE OF ACTION

(Violation of the New Jersey Civil Rights Act - N.J.S.A. 10:6-2)

85.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if more fully set forth at length herein.

86.     The New Jersey Civil Rights Act 10:6-2(c) states:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief. The penalty provided in subsection e. of this section shall be applicable to a violation of this subsection.

87.     Analysis under the N.J.C.R.A. is identical to those presented above under 42 § 1983.

88.     Accordingly, Plaintiff pleads identical facts, circumstances, and violations of law as between the 42 U.S.C. § 1983 claims and the Violations of the New Jersey Civil Rights Act.

89.     Defendants, acting under color of state law, have deprived Plaintiff of her substantive and procedural due process rights as well as her right to free speech by her from a Town Council Meeting for voicing criticism of the acts and motivations of the Township Council President.

90.    Plaintiff's rights and privileges as both a resident of Jackson and a citizen of the United States have been interfered with as a direct result of Defendants' intimidation and threats.

91.    Plaintiff was forcibly removed by police officers from the February 27, 2024, meeting under threat of police violence.

92.    Defendants do not have the authority to remove and ban Plaintiff from City Hall meetings while she was engaged in protected political speech and doing so would be in direct violation of the New Jersey Civil Rights Act.

## AND AS FOR A SEVENTH CAUSE OF ACTION

(Attorney's Fees under 42 U.S.C. §1988(b))

93.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if more fully set forth at length herein.

94.    Under 42 U.S.C. §1988(b), in any action or proceeding to enforce a provision of 42 U.S.C. §1983, the Court has the authority to award attorney's fees to Plaintiff should they prevail on their claims

Accordingly, Plaintiff will be entitled to Attorney's fees pursuant to said authority.

**WHEREFORE**, Plaintiff respectfully demands and requests judgment against Defendants as follows:

        I.Compensatory damages;

        II.Punitive damages;

        III.Declaratory judgement finding §3-12 is unconstitutional and in violation of New Jersey Civil Rights Act 10:6-2(c);

        IV.Declaratory judgement that the curtailing of Plaintiff's speech and subsequent removal was unconstitutional and in violation of New Jersey Civil Rights Act 10:6-2(c);

V.Declaratory judgement that the application of §3-12 to Plaintiff was unconstitutional and in violation of New Jersey Civil Rights Act 10:6-2(c);

VI.Permanent injunctive relief enjoining the Defendants from placing unbridled discretion in the presiding officer to restrain speech based upon its overbroad, vague, viewpoint and content-based rules;

VII.An award of reasonable attorney's fees pursuant to 42 U.S.C. §1983;

VIII.A permanent injunction to cease Defendant's illegal conduct;

IX.Litigation costs and expenses; and

X.Granting such other relief that the court deems just and proper.

Dated:  New York, New York

   April 7, 2025

**ANDERSON LAW**

*Attorneys for Plaintiff*

By:     __/s/ Gregory A. Byrnes___

   Gregory A. Byrnes

104 West 27th Street, 11th Floor

New York, New York 10001

212.466.6570

gregory@andersonlaw.nyc

## VERIFICATION

STATE OF NEW JERSEY            )

                                          ) ss.:

COUNTY OF OCEAN               )

Elenor Hannum, being duly sworn, deposes and says that I am the Plaintiff in the case captioned *Elenor Hannum v. Jackson Township et al.*, and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on the publicly available information and records published by Jackson Township and I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct. Executed on April 14, 2025

_____

Elenor Hannum